**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GCIU-EMPLOYER RETIREMENT FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06 C 7187 |
| v. | ) | |
| | ) | Judge Gottschall |
| JOLIET LITHO-PRINT CO., INC. | ) | |
| | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR JUDGMENT BY DEFAULT

Now comes Plaintiff, GCIU-Employer Retirement Fund, by and through Anita Tanay, its attorney and moves the Court to enter judgment by default in its favor and against the Defendant, Joliet Litho-Print Co. Inc, pursuant to Rule 55 of the Federal Rules of Civil Procedure. In support of this Motion, Plaintiff states:

1.     This is an action filed pursuant to Section 502 of ERISA, 29 U.S.C. 1132 to collect delinquent contributions, liquidated damages and interest owed by Defendant to the Plaintiff Fund, and due to Defendant's chronic delinquency in making contributions, seeking a permanent injunction compelling Defendant to submit timely contribution reports and contributions. The Complaint was filed December 29, 2006.

2.     Defendant was served on January 23, 2007, as indicated in the Declaration of Service attached hereto as Exhibit A, and failed to answer or otherwise plead. Therefore, the Court entered a default against Defendant on March 1, 2007.

3. As indicated in the Declaration of Judi Knore, attached hereto as Exhibit B, Defendant owes delinquent contributions, liquidated damages and interest in the amount of $2,244.25.

4. As indicated in the Declaration of Anita Tanay, attached hereto as Exhibit C, Plaintiff has expended $2,587.84 in attorneys' fees and costs.

5. In addition to monetary damages in the amount of $4,832.09, including $2,244.25 in delinquent contributions, liquidated damages, interest and $2,587.84 in attorneys' fees and costs, the Plaintiff Fund requests that Defendant be permanently enjoined from failing to submit timely monthly reports and contributions as required by the terms of the collective bargaining agreement.

6. A permanent injunction is an appropriate remedy under Section 502(g)(2)(E) of ERISA, which states that the Court may award "such other legal or equitable relief as the court deems appropriate." In a case such as this where the defendant is in default and the applicable statute provides for injunctive relief as a possible remedy, the Court may issue a permanent injunction, provided that the plaintiff meets the requirements for obtaining such an injunction by showing irreparable harm should the injunction not be granted. "*King v. Certified Fence Corporation, (E.D. N.Y., 2006 , )unpublished, reported at* WL 4286898 (copy attached). "ERISA specifically provides for equitable remedies when there are nonpayments of required contributions." *Teamsters Local 639 Employers Trust v. Jones & Artis Constr. Co.,* 640 F.Supp. 223, 225 (D.D.C.1986) (citing *Laborers Fringe Benefit Funds v. Northwest Concrete & Construction, Inc.,* 640 F.2d 1350 (6th Cir.1981)). In *Teamsters Local 639,* the Court granted an injunction where the employer did not remit reports and contributions in a timely fashion. 640 F.Supp. at 225. The Court said that it was warranted because the effect of litigating the claim to

collect contributions and reports "was to burden the Court with unnecessary pleadings, unnecessary status calls of counsel, and forestall a consideration of the merits of the litigation." *Id.* at 224.

8. As described in the Declaration of Anita Tanay, since 2003, the Plaintiff Fund has been required to file multiple lawsuits in order to compel the Defendant to meet its obligations to pay contributions to the Fund. Defendant has never filed responsive pleadings to any of the complaints filed against it. Thus, Defendant has not even attempted to maintain that it has any valid defenses; instead, through its conduct, the Defendant has shown that is simply unwilling to comply with the requirements of the collective bargaining agreement. Defendant is not only requiring the Plaintiff Fund to expend time and resources in pursuing legal action against it, but it is unjustifiably burdening this Court with the repeated actions that Plaintiff has been forced to file.

WHEREFORE, Plaintiff requests that the Court enter default judgment in its favor, order Defendant to pay $4,832.09 for delinquent contributions, liquidated damages, interest, attorneys' fees and costs, and enter a permanent injunction requiring Defendant to submit timely monthly contribution reports and contributions to the Fund.

Respectfully submitted,

GCIU-Employer Retirement Fund

/s/   Anita Tanay
*One of its attorneys*

Jacobs, Burns, Orlove, Stanton & Hernandez
122 South Michigan Avenue
Suite 1720
Chicago, IL 60603
(312) 372-1646

Westlaw.

Slip Copy

Page 1

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
(Cite as: Slip Copy)

King v. Certified Fence Corp.
E.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Theodore KING and Gary La Barbera, et al.,
Plaintiffs,
v.
CERTIFIED FENCE CORP., Defendant.
**No. 04 CV 5715 RJD.**

Feb. 15, 2006.

Avram H. Schreiber, New York, NY, for Plaintiff.

### *REPORT AND RECOMMENDATION*
CHERYL L. POLLAK, United States Magistrate
Judge.
*1 Plaintiffs, Trustees of Local 282 of the
International Brotherhood of Teamsters Welfare,
Pension, Annuity, Job Training and Vacation/Sick
Leave Trust Funds (the "Funds"), filed this action
on December 30, 2004 against defendant Certified
Fence Corp. ("Certified"), pursuant to the
Employee Retirement Income Security Act of 1974,
as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"),
and the Labor Management Relations Act of 1947,
29 U.S.C. § 185 ("LMRA"), seeking to recover
**delinquent contributions** owed to the Funds.
Plaintiffs also seek a permanent **injunction**
requiring defendant to submit the required
contribution reports and payments in accordance
with the rules of the Funds, for so long as defendant
remains obligated.

Following service of the Summons and Complaint,
defendant appeared in the action and the parties
entered into a stipulation of settlement, which was
So Ordered by the court and entered as of February
14, 2005. When defendant failed to make payments
as required under the terms of the settlement,
plaintiffs moved for default, seeking to enforce the
terms of the settlement, along with late charges

consisting of interest, liquidated damages and
attorneys' fees, and a permanent injunction.

By Order dated October 14, 2005, the Honorable
Raymond J. Dearie, United States District Judge,
referred the matter to the undersigned to determine
whether entry of judgment is appropriate, and to
conduct an inquest on damages.

### *FACTUAL BACKGROUND*

According to the Complaint, plaintiffs are trustees
of multi-employer benefit trusts that provide fringe
benefits to employees performing services within
the jurisdiction of Local 282 of the International
Brotherhood of Teamsters (the "Union"). (Compl.
FN1 ¶¶ 2-4). Defendant is a corporation located
in Harrison, New York and a signatory to certain
collective bargaining agreements with the Union
(the "CBAs"). (*Id.* ¶¶ 6, 8). Pursuant to the CBAs
and Declaration of Trust, as amended, defendant is
required to pay fringe benefit contributions to the
Funds for work performed by the individual
employees of defendant based on rate schedules set
forth in the CBAs. (*Id.* ¶¶ 8-9). Plaintiffs
determined that defendant owed the Funds
$78,934.79 in unpaid fringe benefits for the period
from August 2004 and September 2004. (*Id.* ¶¶ 9,
13, 15, 18).

> FN1. Citations to "Compl." refer to the
> Complaint filed on December 30, 2004.

On December 30, 2004, plaintiffs filed this action
seeking an award of the delinquent contributions,
plus interest, liquidated damages, audit fees and
attorneys' fees, as authorized by 29 U.S.C. § 1132.
Defendant appeared in the action and a Stipulation
of Settlement (the "Settlement Agreement") was
entered into between the parties and So Ordered by
the court on February 14, 2005. (Cody Aff. f 4; Ex.
B).FN2 The Settlement Agreement required

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant to pay the sum of $78,634.03 in ten (10) monthly payments with the first payment in the sum of $18,206.11 and the balance of $60,436.92 to be paid in nine (9) equal monthly installments of $6,715.21 each.[FN3] (Cody Aff. ¶ 4; Ex. B). The first payment was to be made on February 20, 2005, with the remaining payments due on the twentieth (20th) day of each month thereafter up to and including October 20, 2005.(Id.) In addition, the Settlement Agreement required defendant to remain current in submitting monthly reports and contribution payments. (Id.)

> FN2. Citations to "Cody Aff." refer to the Affirmation of Theresa Cody, Director of Collections for the Funds, submitted in support of default judgment and permanent injunction, dated February 9, 2006.

> FN3. The Court notes that when the ten payments agreed upon in the Settlement Agreement are totaled, the figure is different from the $78,634.03 listed in the Settlement Agreement. The figure would instead be $78,643.00. This inconsistency does not, however, impact the total amount awarded here, which subtracts the payments actually received from the total owed according to the Settlement Agreement, as discussed, infra n. 5.

*2 According to the Director of Collections for the Funds, defendant made the initial payment of $18,206.11, as well as seven (7) of the monthly payments of $6,715.21.[FN4] (Cody Aff. ¶ 5). Defendant failed to make the two final payments of $6,715.21 that were due in September and October of 2005. (Id. ¶ 5). Under the Settlement Agreement, the defendant is entitled to receive five days notice to cure any default. (Id. ¶ 6; Ex. B ¶ 5). When defendant failed to make the September payment, plaintiffs faxed notice to the defendant in accordance with the Settlement Agreement on September 22, 2005. (Id. ¶ 6; Ex. C). Defendant failed to cure the default, and continues to owe $20,042.71 under the terms of the Settlement Agreement. (Cody Aff. ¶¶ 6, 7).[FN5]

> FN4. While the Cody Affidavit at one point lists the seven monthly payments as consisting of $6,715.12 each, this appears to be an error, as the Settlement Agreement and other portions of the Cody Affidavit refer to the correct amount of $6,715.21. (See Cody Aff. ¶ 4; Ex. B).

> FN5. The $20,042.71 amount is derived by subtracting the amounts already paid, $65,212.58 ($18,206.11 plus seven payments of $6,715.21), from the total amount agreed upon in the Settlement Agreement for entry of judgment in the event of a default, which was $85,255.29. (Id. ¶ 7; Ex. B).

In addition, the Settlement Agreement provides that in the event of default and entry of judgment, defendant will be required to pay (1) all outstanding current contributions, and (2) any related late charges. (Id. ¶¶ 5, 7; Ex. B ¶ 5). According to plaintiffs' records, defendant failed to pay contributions for the period of May 2005 through January 2006, and failed to pay certain charges related to two audits performed by plaintiffs. (Id. ¶ 12; Schreiber Supp. Decl.[FN6] ¶ 6). Thus, plaintiffs seek a permanent injunction, the $20,042.71 sum owed under the Settlement Agreement, unpaid contributions from May 2005 through January 2006, interest, audit fees, liquidated damages and attorneys' fees. (Cody Aff. ¶¶ 25, 26; Schreiber Supp. Decl. ¶ 6).

> FN6. Citations to "Schreiber Supp. Decl." refer to the Supplemental Declaration of Avram H. Schreiber, Esq., submitted in support of default judgment and permanent injunction, dated February 15, 2006.

Following referral of plaintiffs' motion for judgment and permanent injunction, the undersigned issued an Order, dated November 4, 2005, directing the parties to submit papers in support of their damages calculations by December 5, 2005. By Order dated January 24, 2006, the Court extended plaintiffs' time to file papers until February 10, 2006. The Court then granted plaintiffs' request to file a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
(Cite as: Slip Copy)

Supplemental Declaration on February 22, 2006. Although the Court has received plaintiffs' submissions, defendant has neither filed papers, nor contacted the Court to request additional time.

## DISCUSSION

Having reviewed the prior proceedings in this case, the Court respectfully recommends that judgment be entered in favor of plaintiffs. The parties entered into an agreement that required defendant to make certain payments on a monthly basis. (Cody Aff. ¶ 4; Ex. B). The Settlement Agreement specifically provided that if the defendant failed to make the payments as required, judgment would enter in favor of plaintiffs in accordance with the terms of the Agreement. (Id.)

Plaintiffs have submitted a copy of the Settlement Agreement that sets forth the terms of the parties' bargain, the Affirmation of the Director of Collections indicating which payments have not been made in compliance with the terms of the Settlement Agreement, and the Supplemental Declaration of Mr. Schreiber providing reports for the relevant months. Defendant has not responded to plaintiffs' motion for entry of judgment or to this Court's Order requiring the submission of papers in connection with the damages request. Thus, there is nothing before this Court that disputes the veracity of plaintiffs' claim that defendant has failed to comply with the terms of the Settlement Agreement.

*3 Moreover, it is beyond dispute that defendant is in default. Not only has the defendant not responded to the motion for judgment and permanent injunction, see Hirsch v. Innovation International, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 15, 1992) (holding that "[the defendant's] default is crystal clear-it does not even oppose this motion"), but the company has not obtained counsel. Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court pro se. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir.1967) (per curiam) (noting the well settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara

Frontier Transp. Auth, 722 F.2d 20, 22 (2d Cir.1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike a case in which there are potentially millions of dollars involved. See Hirsch v. Innovation International, Inc., 1992 WL 316143 at *2 (deciding that default judgment will not enter because plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendant has failed respond to plaintiffs' motion for entry of judgment and permanent injunction, as well as to the Order from this Court relating to the calculation of damages. Given the numerous opportunities afforded defendant and its apparent lack of interest in participating in these proceedings, there seems to be no compelling reason to delay further.

Accordingly, it is respectfully recommended that judgment be entered in favor of plaintiffs.

## DAMAGES

### A. Default Judgment Damages

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.1992), cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y.1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158 (internal citations omitted); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.1981); Deshmukh v. Cook, 630 F.Supp. 956, 959 (S.D.N.Y.1986); Montcalm Publ'g Corp. v. Ryan, 807 F.Supp. 975, 977 (S.D.N.Y.1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir.1989)). However, the plaintiff must still prove damages in an evidentiary proceeding at

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
**(Cite as: Slip Copy)**

which the defendant has the opportunity to contest the claimed damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp .,* 973 F.2d at 158. " ' While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.' " *Levesque v. Kelly Communications, Inc.,* No. 91 CV 7045, 1993 WL 22113, at \*4 (S.D.N.Y. Jan. 25, 1993) (quoting *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974)).

\*4 While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." *Fustok v. Conticommodity Services, Inc.,* 122 F.R.D. 151, 156 (S.D.N.Y.1988) (citing *Transportes Aereos De Angola v. Jet Traders Inv. Corp.,* 624 F.Supp. 264, 266 (D.Del.1985)), *aff'd,* 873 F.2d 38 (2d Cir.1989). Here, where the plaintiffs have filed reasonably detailed affidavits, declarations and exhibits pertaining to the damages incurred, and where the defendant has failed respond to either the Order of the Court or plaintiffs' Motion, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

### B. Damages Due Under the Settlement Agreement

As an initial matter, the terms of the Settlement Agreement are clear that in the event of a default in the monthly payments, defendant is given five days notice to cure. (Cody Aff. ¶ 6; Ex. B). Plaintiffs have established that despite giving proper notice, defendant has failed to make the remaining two payments owed for September 2005 and October 2005. (*Id.* ¶ 5). The Settlement Agreement provides for entry of judgment in the amount of $85,255.29 in the event of default, with credit to be given to the defendant for payments actually received. (*Id.;* Ex. B). Since defendant made payments of $65,212.58, the total amount remaining is $20,042.71. (*Id.* ¶ 7).

Accordingly, the Court respectfully recommends that judgment be entered in the amount of $20,042.71 in accordance with the terms of the

Settlement Agreement.

### C. Delinquent Contributions

In addition, the Settlement Agreement provides that defendant shall pay all outstanding contributions due as of the date of the entry of judgment. (*Id.* ¶ 7; Ex. B ¶ 5).

Section 1145 of ERISA provides:
Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Here, plaintiffs have alleged that Certified, as an employer, was obligated under the CBAs with the Union to make contributions to the Funds, and that defendant has failed to comply with its contractual obligations, by failing to make payments owed for the period of May 2005 through January 2006. (Cody Aff. ¶ 12; Schreiber Supp. Decl. ¶ 6).

Plaintiffs have provided the Court with copies of the respective CBAs to which defendant was a signatory. (Cody Aff. ¶¶ 8-11; Exs. D, E, F). The various CBAs require defendant to submit monthly reports and contribution payments forty-five (45) days after the close of the calendar month. (Cody Aff. ¶ 8). In a Supplemental Declaration, plaintiffs submitted copies of the actual reports for the relevant time period.[FN7] (Schreiber Supp. Decl. ¶ 5; Ex. A). The reports for May 2005 through January 2006 demonstrate that defendant owes a total of $50,289.18 in principal for this time period. (*Id.*)

> FN7. The Supplemental Declaration of Mr. Schreiber explains that shortly after the Affidavit of Ms. Cody had been submitted, defendant sent the actual reports, without payment, for the months in question. (Schreiber Supp. Decl. ¶ 4). Accordingly,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the calculation of contributions in the Cody Affidavit is replaced by the actual amount of contributions due, documented in the Schreiber Supplemental Declaration. (Schreiber Supp. Decl. ¶¶ 3-6).

*5 In addition, two audits were conducted of defendant's books and records. The first audit covered the period of March 26, 2003 through March 30, 2004 (the "First Audit") (Cody Aff. ¶ 21; Ex. K), and the second audit covered the period of March 31, 2004 through April 26, 2005 (the "Second Audit"). (Cody Aff. ¶ 21; Ex. L). Based on the First Audit, it was determined that defendant owed $1,241.88 in principal, and under the Second Audit, it was determined that defendant owed an additional $2,361.82. (Cody Aff. ¶¶ 22-23). Defendant was provided with copies of each audit and demand letters. (*Id.* ¶ 21). Defendant has never objected to the audits. (*Id.*) Thus, the Court finds that defendant owes an additional $3,603.70 based on the delinquencies discovered during the two audits.

Accordingly, based on a review of the Declaration of Trust, the applicable rate sheets and the audit results, the Court finds that $53,892.88 is owed by defendant in accordance with the CBAs and ERISA.

### D) Other Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145 , the statute specifies the damages to be awarded when judgment is entered in favor of the plan. *See* 29 U.S.C. § 1132(g)(2). In addition to unpaid contributions, the statute provides for an award of:
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of-
(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also, Iron Workers Dist. Council of W.N.Y. and Vincinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502 (2d Cir.1995).

According to Section 13(G) of the CBA, the Trust Agreement governs the various Funds in this action. (Cody Aff. ¶ 9). Under the Trust Agreement, the employer is obligated to pay certain designated late charges whenever the employer fails to pay contributions within five business days after the contributions become due. (Cody Aff. ¶ 5, 8-11, 13; Ex. G). Pursuant to the Restated Agreement and Declaration of Trust adopted on October 28, 2003, interest on unpaid contributions is calculated at 18% per annum. (*Id.* ¶ 3; Ex. G). In addition, where contributions remain unpaid at the time of commencement of the suit, plaintiffs are entitled to the greater of the interest on the unpaid contributions or liquidated damages calculated at the rate of 20% of the delinquency, plus reasonable attorneys' fees. *See* 29 U.S.C. § 1132(g)(2); *see also Lanzafame v. L & M Lario Co., Inc.,* No. 03 CV 3640, 2006 WL 2795348, at *7 (E.D.N.Y. Sept. 26, 2006).

### 1) Calculation of Interest

*6 In their application, plaintiffs seek an award of interest accrued for the period of delinquency calculated from the date the contributions were due until February 15, 2006 in the amount of $2,929.53. (Schreiber Supp. Decl. ¶ 6).[FN8] They also seek interest due and owing on the delinquencies determined during the two audits. (Cody Aff. ¶¶ 22-23). The amount of interest owed on the First Audit consists of $491.31 in interest accrued up to August 18, 2004, plus $335.31 of additional interest accrued through February 15, 2006, for a total of $826.62. (*Id.* ¶ 22). In addition, plaintiffs seek interest due and owing on the delinquencies discovered during the Second Audit, which consist of $382.89 of interest owed up to August 31, 2005, plus additional interest in the amount of $31.57 accrued through February 15, 2006, for a total of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
**(Cite as: Slip Copy)**

$414.46. (*Id.* ¶ 23).

> FN8. In support of the 18% per annum interest rate, counsel for the Funds notes that not only is the rate specifically provided for in the plan (*see* Declaration of Avram H. Schreiber, Esq. dated February 9, 2006 in Support of Request for Default Judgment and Permanent Injunction (" Schreiber Decl.") ¶ 5), but is a rate that was found to be reasonable in *Chicago Dist. Council of Carpenters Pension Funds v. Industrial Erectors, Inc.,* 840 F.Supp. 1248, 1255 (N.D.Ill.1993).

The Court therefore respectfully recommends that plaintiffs be awarded a total of $4,170.61 in interest.

### 2) *Liquidated Damages*

Plaintiffs also seek liquidated damages calculated at 20% of the delinquent amounts for these same time periods as follows:

Liquidated *Period Damages*

| Period | Liquid Damages |
|---|---|
| May 2005 | $1,290.69 |
| June 2005 | $1,287.53 |
| July 2005 | $1,550.46 |
| August 2005 | $1,947.30 |
| September 2005 | $ 1,439.18 |
| October 2005 | $ 980.80 |
| November 2005 | $ 479.74 |
| December 2005 | $ 646.54 |
| First Audit | $ 248.38 |
| Second Audit | $ 472.36 |
| TOTAL | $10,342.98 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Having reviewed the Schreiber Supplemental Declaration, the Cody Affidavit, and supporting documentation, plaintiffs' calculation of liquidated damages appears to be accurate, and this Court respectfully recommends that plaintiffs be awarded $10,342.98 in liquidated damages for the period of delinquency.

### 3) *Attorneys' Fees*

Plaintiffs also seek attorneys' fees and costs in the amount of $10,567.62, representing services performed by counsel in connection with plaintiffs' efforts to obtain this judgment. (Schreiber Supp. Decl. ¶¶ 7-8). In accordance with *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983), plaintiffs' counsel has submitted the Declaration of Avram Schreiber, Esq., dated February 9, 2006, and the Supplemental Declaration of Mr. Schreiber, dated February 15, 2006, as well as contemporaneous billing records setting forth the dates and amount of time during which services were rendered, along with the name of the attorney and a description of services performed. (Schreiber Decl. ¶ 7; Ex. N; Schreiber Supp. Decl. ¶ 7; Ex. B).

Specifically, plaintiffs' counsel's declaration indicates that four attorneys and one paralegal performed services in connection with this matter. (Schreiber Decl. ¶ 7). Their rates are as follows: Avram H. Schreiber, a partner, charging $275.00 per hour; Gail R. Sider, Elizabeth A. Hickey, and Christina Cruz, associates, charging $200.00 per hour; and a paralegal, charging $70.00 per hour. (*Id.*) The $275.00 hourly rate charged for Mr. Schreiber's work is in keeping with the billing rates of similarly experienced attorneys in this district working on comparable matters. *See, e.g., King v. STL Consulting, LLC,* No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (awarding attorneys' fees for Mr. Schreiber's time in a default ERISA case at the rate of $275 .00 per hour); *LaBarbera v. J.E.T. Res., Inc.,* 396 F.Supp.2d 346, 352-53 (E.D.N.Y.2005) (compensating a partner at the rate of $250 per hour for work done on a straightforward ERISA action). It is therefore respectfully recommended that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
(Cite as: Slip Copy)

requested rate of $275.00 per hour for Mr. Schreiber's time be approved.

*7 The rate billed for the time of the three associates on the case, however, should be adjusted. While $200.00 per hour is an appropriate rate for Ms. Sider, who was admitted to practice in 1984 (Schreiber Decl. ¶ 7), it is unreasonable to charge an identical rate for the time of the two other associates, who were admitted much more recently ( *id.* ¶ 7), and accordingly have much less legal experience. Less experienced attorneys in simple actions such as this should be compensated at a lower rate. *See, e.g., King v. STL Consulting, LLC,* 2006 WL 3335115, at *78 (awarding $100.00 per hour for a recently admitted associate in an ERISA action); *LaBarbera v. J.E.T. Res., Inc.,* 396 F.Supp.2d at *352-53 (awarding the rate of $150.00 per hour for associates in an ERISA action). Accordingly, reflecting both the relative simplicity of the present action, and the varying levels of experience of the associates, it is respectfully recommended that Ms. Sider be awarded the requested rate of $200.00 per hour, but that Ms. Hickey, admitted to practice in 2002, be awarded the rate of $175.00 per hour, and Ms. Cruz, admitted to practice in 2005, be awarded the rate of $150.00 per hour.

The Court additionally recommends that the paralegal be compensated at the reasonable requested rate of $70.00 per hour. *See Lanzafame v. L & M Lario Co., Inc.,* 2006 WL 2795348, at *7 (awarding $65.00 per hour for paralegals in an ERISA action); *Morin v. Nu-Way Plastering, Inc.,* No. 03 CV 405, 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005) (awarding $75.00 per hour for paralegals). Plaintiffs also seek an award of costs incurred in litigating this matter, totaling $576.79. (Schreiber Decl., Ex. N; Schreiber Supp. Decl, Ex. B).

Based on a review of the descriptions of the services rendered, this Court finds the time and costs reflected in plaintiffs' request for attorneys' fees and costs to be reasonable and appropriate under the circumstances. Accordingly, the Court respectfully recommends an award of attorneys fees and costs in the amount of $10,451.05, reflecting

the application of the adjusted recommended hourly rates.

### 4) *Audit Fees*

Plaintiffs additionally request audit fees incurred in performing the two audits for a total of $1,841.24. (Cody Aff. ¶¶ 22-23). Audit fees are available based on the language of CBAs signed by the parties, and under Section 1132(g)(2)(E) of ERISA, which provides for "such other legal or equitable relief as the court deems appropriate." *See Lanzafame v. L & M Larjo Co., Inc.,* 2006 WL 2795348, at *8 (citing cases). Having reviewed the documentation submitted in connection with these proceedings, including the Settlement Agreement's provision that audits may result in additional charges being due (Cody Aff., Ex. B), the Court respectfully recommends that plaintiffs' request for audit fees be granted.

### E) *Permanent Injunction*

In addition to monetary damages, plaintiffs also seek a permanent injunction to ensure that defendant complies with the CBA and Declaration of Trust and the requirements of ERISA in the future. (Cody Aff. ¶ 26). A permanent injunction is an appropriate remedy under Section 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E): *see Beck v. Levering,* 947 F.2d 639, 641 (2d Cir.1991) (per curiam), *cert denied,* 504 U.S. 909 (1992); *Lanzafame v. L & M Lario Co., Inc.,* 2006 WL 2795348, at *9 (citing cases); *King v. Nelco Indus ., Inc.,* No. 96 CV 4177, 1996 WL 629564 (E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default, and where the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, including a showing of " 'irreparable harm should the injunction not be granted.' " *King v. Nelco Indus., Inc.,* 1996 WL 629564, at *1 (quoting *Haitian*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 4286898 (E.D.N.Y.)
(Cite as: Slip Copy)

*Centers Council, Inc. v. McNary*, 969 F.2d 1326, 1338 (2d Cir.1992), *vacated as moot*, 509 U.S. 918 (1993)): *see also LaBarbera v. David Liepper & Sons, Inc.*, No. 06 CV 1371, 2006 WL 2423420, at *6 (E.D.N.Y. Jul. 06, 2006). Plaintiffs must also demonstrate the absence of an adequate remedy at law. *See LaBarbera v. David Liepper & Sons, Inc.*, 2006 WL 2423420, at *6.

*8 In this case, not only has defendant defaulted, but in the Settlement Agreement, defendant explicitly agreed to the entry of a permanent injunction in the event of a default in performance under the Settlement Agreement. (*See* Cody Aff. ¶ 26). Thus, under these circumstances, plaintiffs have provided the Court with sufficient documentation in support of their claim for injunctive relief and demonstrated that the remedy at law is inadequate in that defendant, by its actions in ignoring the terms of the Settlement Agreement and continuing to fail to pay contributions as required, "intends to frustrate any judgment ... or show 'contempt for the judicial process.' " *King v. Nelco Indus., Inc.* 1996 WL 629564, at *1 (citing *Rudd v. Advance Bedding Corp.*, No. 95 CV 2099, 1995 WL 548723 (E.D.N.Y. Sept. 8, 1995) and quoting *Laborers Fringe Benefit Funds Detroit & Vicinity v. Northwestern Concrete & Constr., Inc.*, 640 F.2d 1350, 1353 (6th Cir.1981)); *see also Mingoia v. Crescent Wall Systems*, No. 03 CV 7143, 2004 WL 1885952, at *7 (S.D.N.Y. Aug. 23, 2004) (recommending a permanent injunction in light of defendant's past failures to contribute and failure to comply with a Consent Order providing a payment schedule) (citing cases); *Schuck v. Pheonix*, No. 96 CV 1575, 1996 WL 705267, at *4 (E.D.N.Y. Nov. 22, 1996) (permanently enjoining defendants from further violations of a CB A, and requiring them to make contributions as they become due).

Thus, this Court respectfully recommends that plaintiffs' request for a permanent injunction be granted.

## CONCLUSION

Accordingly, it is respectfully recommended that

plaintiffs be awarded damages in the amount of $100,741.47, representing $20,042.71 owed under the Settlement Agreement; $53,892.88 in principal contributions owed; $4,170.61 in interest; $10,342.98 in liquidated damages; $1,841.24 in audit fees; and $10,451.05 in attorneys' fees and costs. In addition, the Court respectfully recommends that a permanent injunction be entered, as requested by the Funds.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1) ; Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

E.D.N.Y.,2006.
King v. Certified Fence Corp.
Slip Copy, 2006 WL 4286898 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT A

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

GCIU - Employer Retirement Fund,

CASE N ~~...~~

V.

ASSIGNE

Joliet Litho-Print Co. Inc., an Illinois
corporation.

```
06cv7187
JUDGE GOTTSCHALL
MAGISTRATE JUDGE SCHENKIER
```

DESIGNATED
MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

Joliet Litho-Print Co., Inc.
c/o Stephen Larranaga, President
423 North Chicago Street
Joliet, IL 60532

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Anita Tanay
Jacobs, Burns, Orlove, Stanton & Hernandez
122 South Michigan Avenue
Suite 1720
Chicago, IL 60603-6145

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

MICHAEL W. DOBBINS, CLERK

~~LOIS ANN LANGE~~

(By) DEPUTY CLERK

DEC 2 9 2006

DATE

AO 440 (Rev. 05/00) Summons in a Civil Action

# RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE January 23'rd, 2007 |
|---|---|
| NAME OF SERVER *(PRINT)*   Philip P. Ducar | TITLE   Special Process Server |

*Check one box below to indicate appropriate method of service*

(G) Served personally upon the defendant. Place where served:   **Personally handed the Summons and the Complaint to Mr. Stephen Larranaga, President of the defendant, Joliet Litho-Print Co., Inc. Service was effected at the business at 423 North Chicago Street, in Joliet, Illinois, at the hour of 11:40 a.m., on 1/23/07.**

G  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

G . Returned unexecuted: _____

G  Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  January 23'rd, 2007      *Philip P. Ducar*
Date                    *Signature of Server*

Post Office Box # 911
Tinley Park, Illinois 60477

*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 06 C 7187 |
| v. | ) |
| | ) Judge Gottschall |
| an Illinois Corporation, | ) |
| | ) |
| Defendant. | ) |

### DECLARATION OF JUDI KNORE

I, Judi Knore, in accordance with 28 U.S.C. Section 1746, hereby give my declaration.

1.      I am the Administrative Supervisor of the Plaintiff, GCIU-Employer Retirement Fund. As Administrative Supervisor, I maintain files and records on behalf of all employers (including the Defendant) that are obligated to contribute to the Plaintiff. This declaration is based upon the Plaintiff's business records and accounting records which are kept under my dominion and control.

2.      Employers pay contributions to the Fund based on a shift rate, as provided by the employer's collective bargaining agreement requiring contributions to the Fund, multiplied by the number of working days per month worked by each covered employee. The shift rate applicable to the Defendant, Joliet Litho-Print Co. Inc., (Joliet) is $10.00 per working day.

3.      Since April 2002, Joliet has not submitted timely contributions and contribution reports. During the period April 2002 through the present, Joliet has made contributions and submitted reports only after the Fund has undertaken legal action to compel it to do so.

4. The complaint pending in this case was filed to collect contributions due for August 2006 and subsequent months.

5. On March 15, 2007, the Fund received a payment in the amount of $5,000 from Joliet. Joliet submitted with the payment monthly reports for the months August 2006 through October 2006, December 2006 and January 2007. Based on these reports, I have calculated the contributions, liquidated damages and interest Joliet owes the Fund through March 2007 and have determined that the outstanding amount, after crediting Joliet for the $5,000.00 payment, is $2,244.25.

4. I declare under penalty of perjury that the foregoing is true and correct. Executed on April 20, 2007.

Judi Knore

Referral Employer:   Joliet Litho Printing Co. (1383)
Referral Date:   02/03
Initital Referral Period: 04/02 - 11/02

*As of 4/20/07*

| Report Month | Deposit Date | Amount Due | Liquidated Damages | | Interest Due |
|---|---|---|---|---|---|
| Aug-06 | | 880.00 | 88.00 | 2 | 14.61 |
| Sep-06 | | 800.00 | 80.00 | 2 | 13.28 |
| Oct-06 | | 880.00 | 88.00 | 3 | 21.91 |
| Nov-06 | | 880.00 | 88.00 | 2 | 14.61 |
| Dec-06 | | 840.00 | 84.00 | 1 | 6.97 |
| Jan-07 | | 630.00 | 63.00 | 1 | 5.23 |
| Feb-07 | | 800.00 | 80.00 | 1 | 6.64 |
| Mar-07 | | 880.00 | | | |

| SUMMARY | | |
|---|---|---|
| Contributions Due | $ | 6,590.00 |
| Liquidated Damages | $ | 571.00 |
| Interest Due | $ | 83.25 |
| Total Amount Due the Fund | $ | 7,244.25 |

       (5,000.00) pymt recvd 3/15/07 (along w/ reports for 08/06-10/06, 12/06 & 01/07)

   $   2,244.25

---

**1st Judgment**

    7,650.00  6/05 - 12/05
     765.00  lds
     190.49  int
    8,605.49
  (10,238.00) pymt recvd 4/20/06 & 4/24/06
   (1,632.51) Atty Fees

**2nd Judgment**

    6,670.00  1/06 - 7/06
     667.00  lds
     177.45  int
    7,514.45
   (2,000.00) pymt recvd 7/27/06
    5,514.45  Due
   (7,410.45) pymt recvd 11/29/06
   (1,896.00) Atty Fees

**3rd Judgment**
    *
    5,280.00  8/06 - 01/07
     528.00  lds
      84.99  int
    5,892.99
   (5,000.00) pymt recvd 3/15/07
    (415.38) * Overstatment of Contributions Due $370.00 & $37.00 ld's, int $8.38

| | |
|---|---|
| 477.61 | Remaining Amount Due on Judgment |
| 886.84 | Feb 07 Contributions, ld's & int |
| 880.00 | Mar 07 Contributions |
| $ 2,244.45 | |

# EXHIBIT C

| | | |
|---|---|---|
| GCIU-EMPLOYER RETIREMENT FUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06 C 7187 |
| v. | ) | |
| | ) | Judge Gottschall |
| JOLIET LITHO-PRINT CO., INC. | ) | |
| | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF ANITA TANAY

I, Anita Tanay, in accordance with 28 U.S.C. § 1746 hereby give my declaration:

1.      I am an attorney licensed to practice law in the State of Illinois and before this District Court.  I am local counsel for the GCIU-Employer Retirement Fund (the "Fund") and counsel of record in the above-captioned matter.

2.      Plaintiff brought this action to collect delinquent contributions, liquidated damages, interest and attorneys' fees owed by the Defendant to the Plaintiff Fund, and seeking a permanent injunction to require Defendant to comply with its obligations to make contributions on a monthly basis.

3.      I am a partner with the firm, Jacobs, Burns, Orlove, Stanton and Hernandez ("JBOSH"), and am counsel of record for the GCIU-Employer Retirement Fund, Plaintiff in the above-captioned matter.   David Huffman-Gottschling is an associate with the firm.

4.      All the attorneys in my firm maintain contemporaneous time records which are transferred on a monthly basis to the firm's central computer database which is then billed.

Listed below is a detailed summary of the time that David Huffman-Gottschling and I have devoted to prosecuting this matter.

| Attorneys: Anita Tanay(AT) David Huffman-Gottschling (DHG) | Date | Time (in tenths of hours) | Description |
|---|---|---|---|
| | | | |
| AT | 12/29/06 | 1.3 | Drafted complaint |
| AT | 1/5/07 | .3 | Telephone conference (TC) process server, T/C Fund counsel |
| AT | 2/22/2007 | .4 | TC Fund Counsel, office conference DHG re status hearing |
| DHG | 2/28/07 | .9 | Court Appearance status hearing |
| AT | 3/5/07 | .3 | T/C Defendant's office manager |
| AT | 3/22/07 | .3 | T/C Fund Counsel |
| AT | 4/20/07 | .6 | Drafted Declaration Judi Knore |
| AT | 4/23/07 | 4.5 | Worked on Motion for Default Judgment and Permanent Injunction, and Declarations. |
| AT | 4/24/07 | 1.3 | Worked on Motion for Default Judgment and Permanent Injunction, and Declarations. |
| | **Total Hours** | **9.9** | |

The total amount of time expended is 9.9 hours. The Fund was billed at the rate of $210.00 for 2006 and $220.00 per hour for 2007. Therefore, the Fund has been required to expend $2,165.00 in attorneys' fees in prosecuting this matter. In addition, the Fund has been required to expend the following amount in costs: $350.00 in filing fees, $70.00 for service of the complaint and summons and $2.84 in photocopying. The combined total for attorneys' fees and costs is $2,587.84. These fees and costs all were necessary and are reasonable in amount.

5.     Since 2003, Plaintiff has been required to file multiple lawsuits in order to compel Defendant to meet its obligations under the collective bargaining agreement and Trust Agreement. As local counsel for the Plaintiff Fund, I have represented it in all of these actions and I have personal knowledge of all of the legal proceedings described below.

    a.   On April 17, 2003, Plaintiff filed suit against the Defendant, Case No. 03 C 2617 to obtain delinquent contributions, liquidated damages and interest for the period April 2002 through November 2002. The lawsuit was dismissed pursuant to a settlement agreement whereby Defendant agreed to pay the delinquency, liquidated damages, interest, attorneys' fees and costs.

    b.   Plaintiff filed suit on November 25, 2003, in Case No. 03 C 8551, and after Defendant defaulted, obtained a judgment for delinquent contributions, liquidated damages, and interest for the period July 2003 through December 2003, as well as costs and fees.

    c.   On May 24, 2004, Plaintiff again filed suit against Defendant for delinquent contributions, liquidated damages and interest in Case No. 04 C 3590. The lawsuit was dismissed after Defendant and Plaintiff entered into a settlement agreement whereby Defendant agreed to pay delinquent contributions, liquidated damages, and interest for the period January 2004 through May 2004 plus costs and attorneys' fees.

    d.   On April 22, 2005, Plaintiff filed suit against Defendant for delinquent contributions, liquidated damages and interest in Case No. 05 C 2408. After Defendant defaulted, Plaintiff obtained a judgment for delinquent contributions, liquidated damages, and interest for the period December 2004 through May

2005, costs and fees. After being served with a Citation to Discover Assets, Defendant tendered a check in the amount of the judgment. The check was returned unpaid due to insufficient funds. In order to obtain payment, Plaintiff was required to file a Motion for a Rule to Show Cause.

e. On October 28, 2005, Plaintiff filed suit against Defendant for delinquent contributions, liquidated damages and interest in Case No. 05 C 6235. After Defendant defaulted, Plaintiff obtained a judgment for delinquent contributions, liquidated damages, and interest for the period June 2005 through December 2005, costs and fees. After Plaintiff served Citations to Discover Assets on Defendant and on third parties, Defendant paid the judgment.

f. On June 8, 2006, Plaintiff filed suit against Defendant for delinquent contributions, liquidated damages and interest in Case No. 06 C 3158. After Defendant defaulted, Plaintiff obtained a judgment for delinquent contributions, liquidated damages, and interest for the period January 2006 through July 2006, costs and fees. In order to obtain payment of the judgment, Plaintiff was required to serve Citations to Discover Assets on Defendant and on third parties and to obtain a turnover order.

6. I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 24th day of April, 2007.

/s/   Anita Tanay

4